JAMES M. REYNOLDS and others *v.* JANE ROWLEY and others.

An exception to the jurisdiction of the court, waived below, cannot be revived in the appellate court.

A power of attorney admitted to record in another State, is not "a record or judicial proceeding of any court," within the meaning of the act of Congress of twenty-sixth May, 1790. A copy of such an instrument, must be certified in the manner required by the act of twenty-seventh of March, 1804.

The declarations of one who had acted as an agent, made after the termination of his agency, are not binding on the principal, though the former be dead at the time of the trial.

An attorney cannot object, on the ground of professional confidence, to being interrogated as to the manner in which he became possessed of papers introduced by him in support of his client's cause, where it does not appear that he received them from his client or his agent.

A party to a suit, interrogated as to a particular fact, cannot, under the pretext of answering the interrogatory, annex to his answer letters of a third person, and thus introduce in evidence statements not under oath, for the purpose of influencing the jury on other points in the case.

The joint owners of a plantation are liable, each for his virile share, for supplies furnished for its use.

Though the powers of attorney given to the manager of an estate by the joint proprietors, may have been revoked by the death of one, and the marriage of another, yet if he continue to act as such, for the benefit of the joint owners, without any express disavowal of his authority, or if he be subsequently recognized as such, either tacitly or expressly, the proprietors will be bound by his acts.

APPEAL from the District Court of Concordia, *Curry,* J.

GARLAND, J. The plaintiffs are factors in the town of Natchez, and represent that they acted as such, and did business for the defendants, who were the owners of a plantation called Marengo, in the parish of Concordia. They represent that, in the month of January, 1832, the defendants Jane Rowley, then Girault, and Frances E. Sprague gave a power of attorney to Sturges Sprague, the husband of the latter, constituting him their general agent, to conduct and manage the affairs of said plantation, with the power to buy and sell, mortgage and pledge, sign notes, and draw bills, &c.; and that, in the month of February in the same year, the late James Kempe gave a similar power of attorney to said Sprague, under which he went on to do business with the plaintiffs, drawing bills on them, procuring their endorsements, obtaining advances in cash and supplies, and other things for the use of the said planta-

tion, and paying the debts of the parties, until the fifteenth of June, 1835, when a balance of upwards of $36,000 was due to them, which, with interest, amounted in about one year after, to more than $39,000, when an account was presented to Sturges Sprague, and admitted by him to be correct, so far as he could form an opinion without examining the vouchers. This sum, with the interest at eight per cent per annum, is now claimed by the plaintiffs. They file with their petition, accounts in detail of all their transactions with Sprague as agent, and papers alleged to be copies of the powers of attorney given to him by the parties.

The defendants answer separately, and put at issue a variety of questions.

The heirs of James Kempe except to the jurisdiction of the District Court, and say they can only be sued in the Court of Probates, being minors and represented by their mother and tutrix. They also deny that their father ever gave a power of attorney to Sprague, and allege, if he did, that the authority was exceeded, and the agency continued after his death in the winter of 1834-5, without authority from them. They set up other defences, which it may be necessary to notice hereafter. Jane Rowley answers, that she gave a power of attorney to Sprague, but, that it had been exceeded with the knowledge of the plaintiffs, and that it was revoked by her marriage in April, 1834, after which, the plaintiffs, with a full knowledge of the facts, continued to deal with Sprague, and greatly increased the amount of the account against the Marengo plantation.

The District Court maintained its jurisdiction, and gave a judgment against Jane Rowley for $12,225 77, with interest at eight per cent, from the fifteenth of June, 1835, and against the heirs of James Kempe for $4451 23, with like interest, and in favor of Frances E. Sprague, it being shown that her portion of the debt had been paid in full; from which judgment the defendants who were condemned, have appealed, and the case is before us as between them and the plaintiffs, neither party having cited Frances E. Sprague, or made her a party to the appeal. No motion has been made to dismiss the appeal on that account; and we have to take the case as it is presented to us, leaving the consequences to the parties.

The exception to the jurisdiction, seems not to have been de-

cided upon in the District Court. We presume, therefore, that it was waived, as the heirs of Kempe went to trial on the merits, without insisting on it. They cannot revive it in this court.

On the trial of the case, the plaintiffs offered in evidence a copy of a document purporting to be a power of attorney from James Kempe to Sturges Sprague. It is an act under private signature. The counsel for the heirs objected to it, on the ground of there being no proof of its being the act of James Kempe, because the justices of the peace had no authority, by the laws of Kentucky, to take such an acknowledgment. There was no evidence of the hand writing of Kempe, nor of that of the justices; and, generally, it was not properly authenticated. The instrument purports to have been executed in Mason county, Kentucky. The maker, it states, took it before two persons calling themselves justices of the peace, and acknowledged it to be his act and deed. The clerk of the County Court certifies that these persons are justices, and the presiding justice certifies to the official character of the clerk. On the faith of these certificates, the instrument was recorded in Adams county, Mississippi, and a copy, certified to have been taken from the original on record in the office of the Clerk of Probates of that county, was offered, without any evidence that the person certifying as clerk was really so. The judge erred in permitting this document to go to the jury. It was not certified in the manner required by the act of Congress of March twenty-seventh, 1804 (Ingersol's Digest, 77. 3 Laws U. S. 621); and the act of May twenty-sixth, 1790, (2 Laws, U. S. 102,) does not apply to such a document. In 4 Mart. N. S. 355, it was held that an instrument acknowledged and certified as this has been, is neither a record nor a judicial proceeding. 4 Mart. N. S. 200. 6 Ib. N. S. 622.

The plaintiffs also offered in evidence a document marked A., annexed to the petition, purporting to be a statement of their account against the Marengo plantation, with a statement of S. Sprague as to its correctness. The counsel for the defendants objected : *first*, that it does not purport to be signed by Sprague, as agent ; *second*, that it bears date subsequent to the death of James Kempe, and two years after the marriage of Jane Rowley, when, it is alleged, that all the powers that Sprague ever possessed

had ceased, and after the sale of the Marengo plantation, when no admissions made by Sprague could bind the defendants, except on oath as a witness. The judge overruled the objections, and permittted the document to go to the jury. We think that he erred. There can be no doubt that, at the time when this document was dated, Sprague was no longer the agent of the parties. Laying out of view the effect which the death of James Kempe, and the marriage of Jane Girault with C. N. Rowley, may have had on the contract of agency, the Marengo plantation had been sold nearly a year, which, beyond all doubt, terminated the agency. Sprague had then no authority to bind the parties by any declarations of his, although it appeared that he was dead at the time of the trial. As to the effect which the declarations or written acknowledgments of Sprague, during the existence of his agency, might have, it is not now necessary to decide; but any acknowledgment of a debt, after his power had ceased, was not binding on the defendants. 2 Starkie, 23, 24.

J. M. Elam, the counsel for the plaintiffs, was sworn as a witness, and being asked by the counsel for Jane Rowley, where and from whom he got the vouchers which had been given him, and which were then being used in support of the plaintiffs' claim, declined answering the question, on the ground that he knew nothing but what had been communicated to him in professional confidence, and the court sanctioned his refusal. To this the defendants excepted. As the point is presented by the record, we think that the judge erred. It is shown that Elam did not receive the papers from Marshall, the resident partner of the house in Natchez; nor from Lacoste, the agent; nor does it appear that he got them from Ilsley, the general agent of the plaintiffs. If, therefore, he did not get them from the plaintiffs, nor from their agents, we are unable to see what professional confidence can be violated. The plaintiffs maintain that the documents are their property. Lacoste states that he gave them to Sprague for examination; and from his statements, it would appear that they were not returned. It is certain that the papers were for a long time in the possession of the husband of Jane Rowley, and of the counsel who defended the first suit; how they got again into the possession of the counsel for the plaintiffs, does not appear. The name of the person

from whom the documents were obtained, cannot, we suppose, be a professional secret. We do not see that it is a matter of much consequence to the decision of the case, but we think the question should have been answered.

We are also of opinion that the judge erred, in permitting the letters of Remsen & Co., of New York, attached to Marshall's answer to interrogatories, to be read to the jury. Under the pretext of stating the time when he was informed of the marriage of Jane Girault with Rowley, he had no right to attach the statements of Remsen & Co., not made under oath, to his answers, and thus get them before the jury, to produce an impression that Rowley and his wife had recognized Sprague's authority subsequently to their marriage.

As to the charge of the judge to the jury, we are of opinion that it is correct; * but with the verdict of the jury we are not entirely satisfied. It does not appear to us that the sums alleged to have been paid in New York to Jane Girault and Thomas B. Kempe, have been sufficiently established; nor are those alleged to have been paid in New Orleans by Reynolds, Byrne & Co. There are other items in the account that require a more satisfactory explanation; and, as at present advised, we are not satisfied of the legality of the claim for interest at the rate of eight per cent per annum, from the 15th of June, 1835. We think justice requires that the case should be remanded for a new trial.

The judgment of the District Court is, therefore, annulled and reversed, and the cause remanded for a new trial, with instructions to the District Judge not to admit as evidence, the document marked D. D. D., purporting to be a copy of a power of attorney from James Kempe to Sturges Sprague, in its present form; also, not to admit the declaration or acknowledgment of S. Sprague to the document A., as evidence; nor to permit the letters of P. Remsen & Co. to be read to the jury; and further, to permit the

---

* The judge charged, that the defendants were liable as joint owners, for their virile shares; and that, though by the death of one of the defendants and the marriage of another, any special power of attorney to Sprague, as manager of the plantation, would be revoked, yet, if he continued to act as such, for the benefit of all the co-proprietors, without any disavowal of his authority, or if recognized, either tacitly or expressly, as such by the defendants, that they would be bound by his acts.

witness Elam to be interrogated as to the name of the person from whom he received the vouchers in question, and for what purpose they were entrusted to him, unless they were received from the plaintiffs, or their agents, or from some other person for the purpose of being used in defending or prosecuting the rights of such person; and, in other respects, to proceed according to law; the appellees paying the costs of the appeal.

*Elam*, for the plaintiffs.

*A. N. Ogden* and *Sanders*, for the appellants.