## No. 1170.

### FOLGER & CO. vs. MRS. ALICE J. PETERKIN AND HUSBAND.

39 815
f52 152
52 1524

A general mandate to the husband by a wife separate in property to manage her plantation and administer her property, does not authorize him to bind her by the drawing of bills of exchange, the power to draw which must be express and special.

When bills are so drawn by such an agent in the name of his principal, payable in the future, and are accepted by the drawees and by them passed off to third persons, the latter cannot recover on them against the principal without proof of express and special authority in the agent to draw them.

APPEAL from the Sixth District Court, Parish of Morehouse. Judge, *ad hoc.*

*C. T. Dunn* for Plaintiffs and Appellants.

*Newton & Cason* for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J. Mrs. Peterkin, a wife separated in property from her husband, is sued upon two bills of exchange drawn by "Geo. A. Peterkin, agent for Mrs. A. J. Peterkin," to his own order and endorsed "G. A. Peterkin, agent," addressed to and accepted by the firm of Wyche & Morgan, of New Orleans.

The defense is a general denial and a special denial that her husband, Geo. A. Peterkin, had any authority to draw the bills as her agent.

The defendant wife testifies positively that she had never given any such authority to her husband, and that she never knew of the existence of such drafts until long after their maturity, when she immediately repudiated them.

There is no countervailing proof except that evidence that her husband acted as her general agent in the administration of a plantation owned by her and of her other property.

Nothing is better settled than that such general mandate does not confer power to bind the principal by drawing bills or notes. The Code itself declares that "A mandate, conceived in general terms, confers only a power of administration. If it be necessary to alienate or give a mortgage or do any other act of ownership, the power must be express." Article 2996.

The next article declares a number of acts which are not within the powers of administration conferred by a mere general mandate, saying: "*Thus* the power must be express and special for the following purposes," enumerating, amongst others, "to draw or endorse bills of exchange or promissory notes." Art. 2997.

Plaintiff contends that the general mandate to manage a plantation

includes the power to draw bills and notes, under the following Article 3000, which declares : "Powers granted to persons, who exercise a profession, or fulfil certain functions, of doing any business in the ordinary course of affairs to which they are devoted, need not be specified but are inferred from the functions which these mandataries exercise."

Whether there exist professions or functionaries, the nature of whose functions would include the right to bind their employers by notes or bills without express authority, might be questioned ; but it is well settled that persons employed to manage plantations or administer other property for their principals, have no such right.  Laplante vs. Briant, 13 Ann. 566 ; Avery vs. Lawes, 1 Ann. 457; Nugent vs. Hickey, 2 Ann. 358; Robertson vs. Levy, 19 Ann. 327; Nall vs. Higginbotham, 21 Ann. 477.

This proposition does not conflict with that announced in Reynolds vs. Rowley, 3 Rob. 201, where the suit was on an account for moneys advanced to an agent having authority to borrow, and where it was held that the fact that the money was so advanced on drafts drawn by the agent without express authority, did not affect the case.  So, no doubt, the manager of a plantation having authority to obtain advances from a merchant might get such advances through the medium of drafts and though the principal might not be bound as drawer, yet he would be bound for the money advanced just as it had been remitted upon request contained in a letter or otherwise.

But there is no claim here upon an account or for moneys advanced; but is a simple suit by a third holder of a bill of exchange to hold the defendant as drawer thereof.  Moreover, it is by no means shown that the bills were drawn in execution of any business of the defendant, or that the proceeds inured to her benefit; and indeed there were no proceeds, strictly speaking, because the drawees never paid them or discounted them, but simply passed them off to plaintiffs as collateral security for an existing debt.

The evidence satisfies us that the business in which the account between Peterkin and Wyche & Morgan was kept, and to which these drafts were passed, was Peterkin's individual business.  In addition to the management of his wife's plantation, Peterkin carried on, in his own name and for his exclusive account, a general country store business, with which his wife had nothing to do.  His account with Wyche & Morgan arose from this business, and it was only after a large indebtedness had accumulated against him that he sought to placate his creditors by furnishing them with these bills executed in the name of his wife, at the special request of Wyche & Morgan.

The judge *a quo* did not err in rejecting plaintiff's demand.

Judgment affirmed.