SCHOTT, Judge.
This is a suit for the balance on an account for services rendered by plaintiff, EDAW, Inc. The case was referred to a commissioner for trial and his report and recommendations were approved and adopted by the trial judge after preparation of the transcript and a hearing on exceptions to the report. The trial court rendered judgment in plaintiffs favor against one of the defendants, New Orleans East, Inc. (NOE) but dismissed plaintiffs suit against the other defendants. Plaintiff has appealed seeking to have two defendants, Michoud Land Company and Eastern Yen- - ture Company, cast in judgment solidarity with NOE. The issue is whether the trial court correctly determined that the obligation undertaken by EDAW was divisible and therefore not subject to the rules governing solidary obligations.
Defendants were the owners of a vast tract of underdeveloped land in New Orleans consisting of about 30,000 acres and known as “New Orleans East”. It was divided by the defendants into tracts referred to as Drainage Districts. In September, 1980 the defendants engaged EDAW to perform various planning and related services associated with the development of the land with the initial efforts directed toward land use, street plans, and problems associated with the .Interstate 10 right-of-way which intersects the tract. At this time Drainage District One consisting of 5,000 acres was drained and ready for development, while the other Districts were wetlands, without levees, undrained, and not suitable for development. Also at this time District One was owned jointly by Michoud and NOE’s subsidiary, Eastern Venture, while the other tracts were owned by NOE.
The contract between the parties consisted of a letter sent by EDAW on September 5, 1980 to NOE’s vice-president, Jay St. Amant, proposing the services on an hourly basis “until a specific scope comes into focus.” It provided that no work on any task would proceed without written authorization by NOE or its authorized representative. It mentioned an “upset figure” *170 of $7,500 for EDAW’s work which would not be exceeded without explicit instructions from NOE. This letter contained the hourly rates to be charged for the services of various personnel and for various expenses together with EDAW’s billing and payment policies. EDAW’s proposal was accepted in a letter dated September 9 by St. Amant on the letterhead of “Tecon Realty Corporation Manager of New Orleans East”.
Tecon was the agent for all of the owners of New Orleans East including Mi-choud, Eastern Venture, and NOE. Orders for work by EDAW were placed by NOE personnel through and in the name of Te-con, and EDAW’s invoices were billed to Tecon. Until the end of 1982 the relationship was entirely satisfactory to all parties with numerous tasks performed by EDAW and payments made by defendants to EDAW of $850,000. However, by May, 1983 over $107,000 was past due. This delinquent balance was reduced by subsequent payments and the balance stood at $57,138.20 at the time of trial.
From the outset of the relationship the defendants had maintained a strict accounting procedure which allocated each of EDAW's tasks to the specific Drainage District which benefited so that only charges for services pertaining to District One were paid by Michoud and Eastern Venture while other charges were paid by NOE as owner of the other Districts. One of the facts in dispute is whether EDAW knew about this arrangement among the defendants. But as EDAW’s witness said, it was surely of no concern to them while they were earning and were paid the first $850,000. It became a concern only after the last work was done and the bills for this work became delinquent.
In any event, the immediate cause for the defendants’ failure to pay EDAW’s bill was that NOE ran out of money and the charges for the final work done by EDAW were allocated to Districts other than District One. The payments totalling about $50,000 on the delinquent account with EDAW were made out of Michoud’s (and East Venture’s) funds (the only ones available) not because the defendants considered that the work benefited District One, but only because NOE’s president directed the controller of all the funds to make the payments.
EDAW’s principal argument on appeal, as in the trial court, is that it was the obligor of an indivisible obligation to Mi-choud, East Venture, and NOE so that the obligees are solidarily liable for the balance. EDAW relies on LSA-C.C. arts. 1815 and 1818 as for its position.
The trial court disposed of EDAW’s position as follows:
There is no question but that New Orleans East, Inc. is liable for a debt incurred by its agent for its benefit. See La.C.C. art. 3021. EDAW argues that despite the fact that Michoud Land Company has already paid one half of this debt for a service that did it little benefit, it is nonetheless liable for the other half. Its whole argument on this point is that Michoud Land Company was solidarily liable with New Orleans East, Inc. for all of the debts incurred by Tecon Realty Corporation on behalf of any of its principals. To support this argument, it relies on Louisiana Civil Code articles 1818 and 1815. Article 1818 merely defines an indivisible obligation as an obligation giving rise to solidary liability. Article 1815 states that an obligation is indivisible “when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division.” There was no evidence that any of the parties to this lawsuit intended to create an indivisible obligation either to or from EDAW and the various owners of New Orleans East. To the contrary, because of the significant differences in the status of Drainage Districts One on the one hand and Drainage Districts Two and Three on the other, the tasks commissioned by Tecon Realty Corporation were divisible between those that benefited Drainage District One and those that benefited Drainage District Two and Three. They were paid for from separate funds derived from separate sources.
*171 The only link established between Eastern Venture Company and Michoud Land Company as owners of Drainage Districts Two and Three, is that they had a common agent. This does not create solidary liability for all debts created by the agent. “Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties’ intent or from the law.” La.C.C. art. 1796. There is nothing in evidence in this matter or in Louisiana law that establishes a solidary obligation under the facts described herein. If Michoud Land Company and Eastern Venture Company had any liability for the debt sued on by EDAW, such debt would be attributable to their co-ownership of Drainage District One. Under Louisiana law, that liability could only be for their virile share of the debt. See Reynolds v. Rowly, 3 Rob. 201 (1842); Watley [Whatley ] v. McMillan, 152 La. 978, 94 So 905 (1922). Even if the facts in this case are construed most favorable to EDAW and it is assumed that the Land Supply Atlas benefited Drainage District One to the same extent that it benefited Drainage District Two and Three, the net result is the same; Michoud Land Company discharged any such liability that it might have had to EDAW when it paid approximately one-half of the invoices that are the subject of this lawsuit. If the debt to EDAW was apportioned between the defendants based on the relative sizes of the drainage districts that they owned, then Michoud Land Company has paid for more than its share.
The trial court’s findings of fact will not be disturbed on appeal in the absence of manifest error. Consequently, we accept this conclusion that there was no evidence that “any of the parties”, which includes EDAW intended to create an indivisible obligation. In reaching this conclusion the court made a negative credibility evaluation of the testimony of EDAW’s principal witness who stated that he regarded the tasks assigned by Tecon’s personnel as benefiting the project as a whole and never considered the liability of each individual task to be that of the owner of one District. In any event, the reasons of the trial court do not specifically contain factual findings or conclusions which establish that the object of EDAW’s performance, because of its nature, was not susceptible of division.
EDAW was obliged to perform tasks as directed by several key Tecon personnel. The original requirement that orders be in writing was modified so that work assignments were given by oral as well as written communications. The initial work concerning land use and street planning concerned the project as a whole. As the work progressed EDAW did work on a large regional park which was to be located in District Two but would serve the whole New Orleans East community. In meetings with the City Planning Commission specific items of major street planning in District Two had to be considered for approval to be obtained in District One.
The relationship among the parties was that EDAW performed whatever tasks were assigned by the common agent Tecon. Some of the tasks benefited a single District while many benefited the New Orleans East project as a whole. Under the contract EDAW could not pick and choose tasks depending on what District was benefited. Each owner as an obligee had the right to demand the whole performance from the common obligor so that the obligation was solidary. C.C. art. 1790. The object of EDAW’s performance was to perform all tasks assigned. The object was not for EDAW to decide to consider each assignment and perform or not depending on what District was most directly affected. In this sense the object was not subject to division, but it was indivisible because of its nature and was thus subject to the rules governing solidary obligations. C.C. arts. 1815, 1818.
After EDAW had performed numerous tasks under the contract benefiting the entire project and after having been paid $850,000 without the question of which District was benefited by each task ever being raised the question was raised for the first time over the delinquent balance sued on. As a practical matter the problem resulted from the fact that NOE had no more funds *172 so that only Michoud had the means to pay the bill. Unfortunately for EDAW, the last work done under its contract for which no payment was made was related to the Land Supply Atlas and its related population study. The trial court found as a fact that these particular studies were for the benefit of Districts Two and Three and were only incidentally beneficial to District One. While there is evidence to the contrary we accept this factual conclusion of the trial court. But these tasks were performed by EDAW on the same basis as were all the other tasks performed under the one contract. They were an integral part of the overall obligation undertaken by EDAW to perform all tasks ordered by Tecon as agent for all owners concerning the planning and development of New Orleans East as a whole. The trial court’s after the fact segregation of the final tasks as relating primarily to District Two and Three and the corresponding exoneration of Michoud as owner of District One from liability constitutes an erroneous interpretation of the contract among these parties. The peculiar facts of this case and the nature of the obligation undertaken by EDAW in particular clearly distinguish it from the cases cited by the trial court. Under the rules governing solidary obligations Michoud and East Venture owe the balance of EDAW’s bill.
EDAW also seeks interest at the rate of one and one-half percent per month from the date each unpaid invoice became due. The trial court awarded interest (against NOE) at the legal rate from date of judicial demand until paid. The trial court's finding that “EDAW offered no evidence of the cost of its credit” is manifestly erroneous. The testimony of EDAW’s principal witness established the cost of its credit. Finally, the trial court committed legal error by failing to apply C.C. art. 2000 in awarding interest only from date of judicial demand.
Accordingly, the judgment dismissing the suit of plaintiff, EDAW, Inc., against defendants, Michoud Land Company and Eastern Venture Company is reversed and set aside and there is judgment in favor of plaintiff and against these defendants solidarity with New Orleans East, Inc., in the sum of $57,138.20 with interest rate at the rate of one and one-half percent from the date each invoice became due, until paid, and for attorney’s fees in the amount of $20,065.50, and for all costs of the proceedings.
REVERSED AND RENDERED.