RONALD L. CHAPMAN
v.
KATHERINE CARNEY, U.S. AGENCIES AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY DOCKET NUMBER 477,400, DIVISION J (25)
ROSA MAE CLARK CHAPMAN
v.
KATHERINE CARNEY, U.S. AGENCIES & STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY DOCKET NUMBER 477,401, DIVISION J (25)
No. 2009 CA 0216, Consolidated with No. 2009 CA 0217.
Court of Appeals of Louisiana, First Circuit.
August 31, 2009.
Not Designated for Publication
RONALD L. CHAPMAN, Sr., ROSA MAE CHAPMAN, In Proper Person-Plaintiffs/Appellants Ronald L. Chapman, Sr. & Rosa Mae Clark Chapman.
ALLEN J. MYLES, Attorney for Plaintiff/Appellant Ronald L. Chapman, Sr.
KAREN WIEDEMANN, Attorney for Intervenor-Appellee Weidemann & Weidemann.
BRET T. WALSH, Attorney for Defendants-Appellees Katherine Carney & U.S. Agencies Insurance Company.
GLEN SCOTT LOVE, Attorney for Defendant-Appellee State Farm Mutual Automobile Insurance Company (Ronald L. Chapman).
DARRELL J. LOUP, Attorney for Defendant-Appellee State Farm Mutual Automobile Insurance Company (Rosa Mae Clark Chapman).
Before: PETTIGREW, McDONALD, HUGHES, JJ.
McDONALD, J.
This matter arises from consolidated lawsuits with a long and tortured history. The basis for the lawsuits is an automobile accident that occurred on December 1, 1999, in which Rosa Chapman was driving and her husband, Ronald, was a passenger. In October 2000, separate lawsuits were filed against the driver of the other vehicle, {Catherine Carney, on behalf of Rosa Mae Clark Chapman and Ronald L. Chapman. These suits were eventually consolidated by order of the court signed by the judge accepting the consolidated cases on April 5, 2001.
Depositions of the persons involved in the accident, an investigating police officer, and witnesses were scheduled in early March 2001. Neither Rosa nor Ronald Chapman attended. Depositions of Rosa and Ronald Chapman were rescheduled on three occasions, totaling six depositions noticed between January and June 2001, none of which were attended by the plaintiffs. In November 2002, Ronald Chapman's original counsel moved to be withdrawn as attorney of record, advising the court that the law firm had been fired without cause.[1] In November 2002, an attorney enrolled as counsel of record for both Chapmans and subsequently withdrew in January 2003. In July 2003, Charles Rea enrolled as counsel for Rosa Chapman.
In August 2003, counsel for Ronald Chapman filed a first supplemental and amending petition naming Rosa Chapman as a defendant. The trial court subsequently sustained an objection raising the exception of prescription, which was reversed by a panel of this court,[2] and Ronald Chapman was allowed to maintain his action against the insurer of Rosa Chapman. A case management schedule, dated March 5, 2004, indicates discovery cutoff was set for August 6, 2004, and the pretrial order was due September 11, 2004.
In May 2006, Charles Rea submitted a motion to withdraw to the court that alleged that after investigating the accident, the Chapmans were advised that the independent eye witness to the accident indicated that Rosa Chapman caused the accident and that they should either drop Mrs. Chapman's claim or find another attorney. Stating, "[S]ince there is nothing that this office has done or can do to prosecute a claim on behalf of Mrs. Chapman," Rea moved to be relieved of any further responsibility for representing her, and be allowed to withdraw as counsel of record.
On October 30, 2006, a hearing was held on motions to set the matter for trial and to bifurcate the trial. The hearing was attended by Allen Myles on behalf of Ronald Chapman; Charles Rea did not attend. The trial court bifurcated the trial, gave Rosa Chapman 60 days to seek counsel, and ordered that the motion to set trial would be reset for early 2007, at which time all counsel of record would receive notice.
The record indicates that a status conference was held on February 27, 2007, attended by Charles Rea, as counsel for Rosa Chapman, at which time a trial was set for August 16, 2007. Allen Myles also attended, representing Ronald Chapman. Although the record does not confirm this, it is alleged in the joint appellee brief that Mrs. Chapman wrote to the judge on May 6, 2006, pleading to have Rea stay on as counsel of record. Further, it is alleged that Rea again submitted a motion to withdraw at the February conference, which the judge denied. A minute entry for the August trial date states that the matter came before the court for a civil bench trial, that none of the parties appeared, that the court was not notified of any disposition, and therefore the matter was dismissed.
According to briefs of both parties, a mediation conference was held on August 8, 2007. Charles Rea attended representing Rosa Chapman, and Allen Myles represented Ronald Chapman. The claims of all parties were settled at the conference. On February 6, 2008, counsel for all parties submitted a joint motion to dismiss with prejudice. The same day Ronald and Rosa Chapman filed a motion for a hearing not to dismiss with prejudice, which was denied. The trial court ordered the matter dismissed with prejudice on February 7, 2008. A motion for a new trial was filed, and denied on February 11, 2008. The minute entry indicates the motion for a new trial and order for the hearing was denied, and a copy of the denial order was mailed to all counsel of record. The Chapman brief alleges that Ronald Chapman called the clerk of court for East Baton Rouge and asked how to file an appeal and was told to write a motion for appeal. Ronald and Rosa Chapman filed a motion for appeal on October 27, 2008.
The Chapmans' appeal asserts that the court erred in granting the motion to dismiss; erred in allowing Charles Rea to sign representing Rosa Chapman; erred in denying plaintiffs' motion not to dismiss; erred in denying plaintiffs' motion for new trial; erred "in safe guarding plaintiffs legal rights;" and erred in sanctioning the biased August 8, 2007 mediation hearing.
The appellants argue that the Chapmans' appeal, filed over eight months after the denial of the motion for new trial, was untimely. On initial review, we agreed. Louisiana Code of Civil Procedure article 2087, as applicable here, provides that an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of the date of the mailing of the notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict. The notice of the denial of the motion for new trial filed by the Chapmans was mailed to all counsel on February 12, 2008. Sixty days from that date, the right to file an appeal was extinguished. October 27, 2008 is clearly well beyond the time that the law allows for a timely appeal. However, the record only evidences notice being mailed to counsel. The motion for a new trial at issue here was filed pro se by the Chapmans. It is apparent that the Chapmans were aware of the denial of the motion. When questioned at oral argument why they had waited so long after the denial of the motion to file an appeal, the response was that no one had advised them that they only had sixty days to file the appeal. However, the record does not provide evidence that the notice that started the sixty-day period had been mailed to the Chapmans, and in the interest of justice, we will consider the appeal as timely.
It is the Chapmans' position that Charles Rea "fired" them, and that he no longer represented them after May 9, 2006. On May 9, 2006, Judge Don Johnson signed the motion to withdraw submitted by Charles Rea. It is unclear when the parties became aware of this. It seems that the trial court was made aware of it at least by the October 30, 2006 hearing on the motions referenced previously. At that time, Judge Calloway, the judge to whom these lawsuits were assigned, gave Rosa Chapman sixty days to seek counsel.
Chapman asserts that irreparable legal and economic harm resulted from the trial court not "enforcing the order signed by Judge Don Johnson on May 9, 2006 for Mr. Rea." We recognize that the Chapmans are not attorneys and have considered the appeal based on the merits of the substance of their complaint, making allowances for their lack of technical and procedural expertise. It is their position that once Charles Rea "fired" them, he could no longer represent them. However, once enrolled as counsel, an attorney may not be relieved of responsibility to the party he undertook to represent, or to the court, without permission of the court. A trial court has inherent power to take whatever reasonable actions are necessary to maintain control of its docket. Wallace v. PFG, 04-1080 (La. App. 1st Cir. 5/6/05), 916 So.2d 175, 178.
The lawsuits that form the basis for this action were filed in October 2000. In August 2006, a joint motion to set the matter for trial was filed. Trial courts are under a duty to schedule their trial work and dispose of same expeditiously to alleviate the continuous problem of crowded dockets. At Your Service Enterprises, Inc. v. Swope, 07-1620 (La. App. 4th Cir. 1/14/09), 4 So.3d 138, 146 n.16. Although Judge Calloway had not relieved Charles Rea of his responsibility in this matter, he allowed Rosa Chapman sixty days to seek counsel, requiring all parties, who are also entitled to fairness and justice from the court, to hold the matter in abeyance for that time.
When the matter was next addressed by the trial court, at the February 27, 2007, status conference when the trial date was set, Charles Rea attended as counsel for Rosa Chapman. It has been suggested that he re-urged his motion to withdraw and that Judge Calloway denied it. Regardless, the fact remains that on February 27, 2007, when he attended the status conference and signed the case management schedule on behalf of Rosa Chapman, Charles Rea was Rosa Chapman's counsel of record. Apparently, Mrs. Chapman had not retained other counsel within the time allowed by the court for her to do so. The trial judge is afforded wide discretion in the maintenance of his docket and any decision pertaining thereto will not be overturned absent a showing of breach of that discretion. Dufrene v. Doctor's Hosp. of Jefferson, Inc., 02-654 (La. App. 5th Cir. 12/11/02), 836 So.2d 309, 311. We find no error in the trial court's refusal to allow Charles Rea to withdraw as counsel.
The Chapmans allege error by the trial court in granting the appellants' motion to dismiss and denying their motion "not to dismiss." It seems that the Chapmans were aware that the motion to dismiss had been or was being filed. Their pleading, therefore, should have been an opposition to the filed motion. We consider whether it was error for the trial court to grant the motion to dismiss filed by all counsel representing all parties in this matter.
The trial court had been assigned this matter in October 2000. In the course of seven years, numerous issues had been addressed and adjudicated by the trial court. This is not a matter that had languished with no action being taken, in which it could be argued that the trial court was not familiar with the parties or the issues. In fact, the trial court had orally dismissed the matter in August 2007, when no action was taken on the trial date; however, no written judgment of dismissal was signed.
At the time the motion to dismiss was filed in February 2008, all counsel representing all parties represented to the court that the matter had been settled. There is no doubt that the Chapmans were aware that Charles Rea attended the mediation/settlement conference on August 8, 2007, representing Rosa Chapman; Ronald Chapman was there. The Chapmans also complain to us and have filed a complaint with the Office of Disciplinary Council against Charles Rea regarding the fees charged. This is not a matter that we have the authority to adjudicate. However, it causes us to question exactly when and why Rosa Chapman decided to seek to have Charles Rea removed as counsel.
The pleadings filed by the Chapmans, the motion not to dismiss and the motion for a new trial, presented the issues raised here to the trial judge. He denied both motions filed by the Chapmans. In order to do so, he made factual findings that are subject to review under the clearly wrong/manifest error standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Pierce v. State, Office of Legislative Auditor, 07-0230 (La. App. 1st Cir. 2/8/08), 984 So.2d 61, 67. Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Id. With regard to questions of law, the appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Id.
After careful review of the entire record in this matter, we find no reversible error by the trial court. Therefore, the judgment of dismissal ordered by the trial court on February 7, 2008, and the denial of the motions of February 6, 2008, and February 11, 2008, are affirmed. Costs are assessed to Ronald and Rosa Chapman.
AFFIRMED.
NOTES
[1] A member of the law firm also represented Rosa Chapman. Although no motion to withdraw as attorney for Rosa was found in the record, it appears that counsel for both parties was replaced.
[2] Chapman v. Carney, XXXX-XXXX (La. App. 1st Cir. 5/6/05), unpublished, writ denied, XXXX-XXXX (La. 1/27/06), 922 So.2d 551.